**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY STERLING, M.D.

Plaintiff,

vs. CASE NO.: 8:06-cv-2334-T-17TGW

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY AND UNUMPROVIDENT CORPORATION,

Defendants.
_____________________________________/

**ORDER ON MOTION TO TRANSFER VENUE AND REQUEST FOR ORAL ARGUMENT, AND ORDER ON MOTION TO DISMISS COUNTS TWO, THREE, FOUR, FIVE, AND SIX**

This cause comes before this Court on two motions-and-incorporated-memoranda-in-support filed simultaneously by Defendants, Provident Life and Accident Insurance Company ("Provident") (Docket Nos. 8 and 10) and Unumprovident Corporation ("Unumprovident") (Docket Nos. 17and 18) (collectively "Provident"), and memoranda-in-opposition filed by Plaintiff, Anthony Sterling M.D. ("Sterling"). Defendants filed a Motion to Dismiss and Incorporated Memorandum of Law In Support (Docket No. 10), in response to which Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Docket No. 17). Defendants also filed a combined Motion To Transfer Venue and Incorporated Memorandum of Law in Support and Motion to Defer Ruling on Defendants' Motion to Dismiss and Request for Oral Argument (Docket No. 8), in response to which the Plaintiff filed a Memorandum of Law In Opposition to Defendants' Motion to Transfer Venue (Docket No. 18).

## **BACKGROUND**

Plaintiff Sterling is an orthopedic surgeon who practiced in Connecticut until 1998. In 1981, Provident issued and delivered a disability insurance policy, in Connecticut, to Sterling which was to provide benefits for life for disabilities resulting from injury, and would provide benefits until Sterling reached age 65 for disabilities resulting from sickness. Sometime prior to 1998, Sterling developed spinal stenosis, a covered disability, which prevented him from performing the essential duties of his occupation.

In September, 1998, Sterling filed a disability claim in Connecticut for this condition, categorizing it as a sickness. Sterling expected to return to work in March 1999, approximately six (6) months later. Sterling underwent surgery in Connecticut in September, 1998. Sterling claims that during this surgery the surgeon cut a nerve in his spinal cord, which resulted in paralysis of Sterling's left arm, fluid leakage, and other injury, rendering him totally and permanently disabled. Provident sent a New York based field representative to interview Sterling in Connecticut sometime in 1998 or 1999 regarding the claim. Provident began paying on the claim in January 1999, while Sterling lived in Connecticut, and continued to pay Sterling once he moved to Florida later that year. Sterling continued to receive benefits in Florida for seven-(7) years, until July, 2006.

In May, 2006, Provident issued a letter from its claims center in Worcester, MA, to Sterling's residence in Florida, stating that, pursuant to the policy, the disability payments for his sickness would discontinue in July, when he reached age sixty-five-(65). Sterling objected to this and communicated to Provident's Worcester office that his disability is the result of the injury that occurred during the 1998 surgery, and not the original spinal stenosis. If Sterling's current disability is reclassified as an injury resulting from the surgery, he would continue to receive benefits for life under the policy. The crux of the debate is thus whether the disability is the result of the sickness (spinal stenosis), or the injury (the cut nerve) received during the surgery to correct the sickness in 1998.

Provident had a field representative from Worcester telephone Sterling in Florida, to discuss Sterling's objection. Provident then conducted further investigations, though it is unclear how much investigation activity there was, and how much of it actually took place in Connecticut, as opposed to taking place in the Chattanooga, Tennessee or Worcester, Massachusetts offices, concerning Connecticut events and witnesses. Finally, Provident issued a letter from its Worcester office, which informed Sterling of Provident's final decision declining to re-classify his current disability as resulting from an injury, and thus, pursuant to the policy's payments for disability resulting from sickness, Provident would discontinue Sterling's disability payments in July, when he reached age sixty-five (65).

Plaintiff Sterling filed a six-(6) count complaint against Provident on December 19, 2006. Count I is an Action to Recover Benefits Under Disability Insurance Policy; Count II is for Breach of Common Law Duty of Good Faith and Fair Dealing; Count III is for Intentional Infliction of Emotional Distress; Count IV is for Negligent Infliction of Emotional Distress; Count V is for Violation of Connecticut Unfair Insurance Practices Act; and Count VI is for Violation of Connecticut Unfair Trade Practices Act.

## REQUEST FOR ORAL ARGUMENT

This Court generally does not hold oral arguments on motions to transfer venue or to dismiss complaints. There is nothing in the papers before the Court to suggest that oral argument is necessary for the resolutions of the current motions or that such oral argument would assist the Court. Therefore, the request for oral argument is **DENIED**.

## TRANSFER OF VENUE

### Standard of Review

Proper venue for an action brought in Federal Court is governed by 28 U.S.C. §1391(a) *Venue Generally*, which discusses venue for cases that are founded only on diversity of citizenship, as in the present case. It provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought *only in* (1) a judicial district where any defendant resides, if all defendants reside in the same State, *(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2006) (emphasis added). Section 1391(a)(1) of 28 U.S.C. is not applicable as it applies to situations where all defendants reside in the same state. Section 1391(a)(3), 28 U.S.C. is not applicable as it applies to cases which § 1391(a)(1) or §1391(a)(2) are not applicable. Therefore, any venue in which a substantial part of the events or omissions giving rise to the claim occurred is a proper venue. *Id*.

Transfer of venue for an action brought in federal court is governed by 28 U.S.C. § 1404(a) *Change of Venue*. It provides as follows:

> (a) For the *convenience of parties and witnesses, in the interest of justice*, a district court may transfer any civil action to any other district or division where it *might have been brought*.

28 U.S.C. § 1404 (2006) (emphasis added). Therefore, in order to determine if transfer of venue to Connecticut is appropriate, it must first be determined if a Connecticut venue would have been appropriate under this framework.

The party seeking a transfer of venue "has the burden of persuading the trial court that the transfer is appropriate and should be granted." *American Aircraft Sales International, Inc. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347, 1351 (M.D. Fla. 1999). "In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer." *Id.* "The standard of transfer under § 1404(a) allows broad discretion of the trial court." *Id.* The Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that "the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *Id.* "The decision to transfer venue is within the discretion of the trial court, and each case should be decided on the particular facts." *Id*. When considering a motion to transfer

venue, the Middle District of Florida has stated that the following seven (7) factors must be considered:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* "In determining the propriety of transfer, the court must give considerable weight to the plaintiff's choice of forum." *Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp.2d 1332, 1339 (M.D. Fla 2002). "One of the most important factors for consideration is the convenience of the witnesses." *Id*.

**Discussion**

This Court has subject matter jurisdiction as there is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00). 28 U.S.C. 1332 (2006). Neither party disputes that personal jurisdiction exists both in Florida and Connecticut. Personal jurisdiction is proper in Florida for Defendants under Florida's long arm statute, Fla. Stat. § 48.193 (2007). Personal jurisdiction would be proper in Connecticut for Defendants under Connecticut's long arm statute, Conn. Gen. Stat. § 52-59b (2007), as their business is registered to conduct business in Connecticut. Discussion is thus limited to venue.

*Whether Venue in Connecticut Would have been Proper*

To determine proper venue under §1391(a)(2), "only the events that give rise to a claim are relevant," and of the "places where the events have taken place, only those locations hosting a 'substantial part' of the events will be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). The relevant acts or omissions are only those that have a "close nexus to the wrong." *Id*. at 1372. The "close nexus" reasoning that the Eleventh Circuit Court of Appeals adopted in the *Jenkins decision* came from *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). However, the *Woodke* Court also limited the acts it was willing to consider to those acts committed by the defendant. *Id.* at 985. Some courts have declined to limit the acts they consider to those acts committed by the

defendant. See e.g., *In re Enron Corp*., 317 B.R. 701 (Bankr.S.D.Tex. Nov 15, 2004). The Eleventh Circuit did not expressly adopt the reasoning that would only allow the acts of the defendant to be considered, and this Court does not adopt that reasoning either. As such, all acts that have a "close nexus" to the wrong will be considered. Not relevant to determining venue under this approach are events that do not have a close nexus to the wrong. *Jenkins Brick*,, 321 F.3d 1373. Acts not included are those that have an "insubstantial connection with the kinds of events that give rise to the claim." *Id.*

Guidance for what acts or omissions have a close enough nexus to constitute "giving rise to a claim" in a breach of contract context can be found in *Jenkins Brick*. *Id*. at 1372. Such acts included: where the contract was presented, where the contract was executed, where the contract was intended to be performed, and where the contract was breached. *Id*. That court noted that the most important element is the element of breach. *Id*. Similarly, guidance for acts not having a close enough nexus to constitute "giving rise to a claim" can be found in *Jenkins Brick*. Acts such as attending sales meetings or training classes were found to be irrelevant to a breach of contract action. *Id*. at 1373. Further, the acts of manufacturing trailers and signing an agreement were not closely related to an action for "passing off." *Id.* at 1372 (citing *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995)).

The Defendants point to the following acts to establish that venue in Connecticut is proper: the policy was issued and delivered in Connecticut, the claim was filed in Connecticut, and a substantial part of the claim investigation activity "concerned events and witnesses that were located in Connecticut." The Plaintiff takes a narrower interpretation and proposes that the only relevant act is the actual breach, and therefore, venue is only proper where the breach occurred, which is Florida.

The *Jenkins Brick* discussion does not limit itself to the location of the breach itself, but includes the location of acts that have a close nexus to the wrong. *Id*. at 1372. Therefore, similar acts must be considered for this venue analysis. The relevant acts in the breach of contract case the *Jenkins Brick* Court discussed began with the presentation of the contract. *Id*. at 1372. The activities discussed included acts by the defendants that generally related to presentation, performance, and breach of that contract. *Id*. Therefore, acts relevant to presentation, execution, performance, and breach of the policy

in this case will be considered to have the necessary close nexus with the cause of action to be considered.

The contract was presented by Provident to Sterling in Connecticut. It was signed (i.e. executed) in Connecticut. The policy was in force (being performed) by Provident in Connecticut because the Plaintiff was covered by the policy while he was in Connecticut, even though no claim had been made.

The following acts influenced what payouts would be made on the policy, and therefore, had an affect on performance: this sickness lead to a claim on the policy which was made in Connecticut, and investigation related to the claim based on sickness was conducted in Connecticut, surgery to correct the disability occurred in Connecticut, the injury that is alleged to be the cause of the continued disability would have occurred during the surgery in Connecticut, and the policy was performed (payments were made) for "a few months" in Connecticut, and for approximately seven (7) years in Florida. Additionally, Sterling worked with a physical therapist for a "few months" in Connecticut, and worked with another physical therapist for over seven (7) years in Florida.

The following acts pertain to the discontinuation of benefits: Sterling has been treated by two additional physicians in Florida, and his records have been reviewed by two neurosurgeons in Florida. Provident sent the notice regarding termination of benefits to Sterling's residence in Florida. Sterling notified Provident of his objection to the termination of benefits, presumably from Florida. Upon receiving notice of objection from Sterling, Provident telephoned Sterling in Florida to discuss the objection. Provident apparently conducted a review of Sterling's medical records, though the location and intensity of this activity is not clear. Provident then sent another letter confirming the denial of any reclassification of his disability to injury to his home in Florida. Finally, the alleged breach of contract occurred in Florida when Provident discontinued making payments to Sterling at his Florida home.

Venue is proper where a substantial part of the acts that gave rise to the claim occurred. *Jenkins Brick*, 321 F.3d at 1372. Jenkins does not limit the term substantial part to mean the majority of the acts. Nor does the wording of the statute decrease the importance of the location where the wrong has been committed. *Id.* at 1371. A

significant portion of the performance of the contract occurred in Florida. The discontinuation of disability payments, the basis for the cause of action, also occurred in Florida. Therefore, venue in Florida is appropriate.

There are many acts that took place in Connecticut that are also closely related to the claim, including presentation, execution, and performance of the policy, investigation of the claim, surgery to correct the disability, the alleged injury that caused the injury disability, and physical therapy to correct the disability. These constitute a substantial part of the acts giving rise to the claim, and therefore Connecticut could have been a proper venue for this action. Since Connecticut is a venue where this action might have been brought, the question becomes whether transfer to this venue would be "for the convenience of the parties and witnesses, and in the interest of justice." 28 U.S.C. §1404(a).

*Whether a Transfer of Venue is for the Convenience of the Parties and Witnesses, and in the Interest of Justice*

"In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer." *American Aircraft*, 55 F.Supp.2d at 1351. When considering a motion to transfer venue, the Middle District of Florida has stated that the following seven (7) factors must be considered:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* "In determining the propriety of transfer, the Court must give considerable weight to the plaintiff's choice of forum. *Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp.2d 1332, 1339 (M.D. Fla. 2002). Therefore, only if the Defendants show the balance of convenience is strongly in favor of transfer, using the seven (7) factors listed above, will the Plaintiff's choice of venue be disturbed. *American Aircraft*, 55 F.Supp.2d at 1351.

First, the Plaintiff has chosen the Middle District of Florida as its preferred venue. This choice must be given considerable weight. *Response Reward Systems*, 189 F.Supp.2d at 1339. Plaintiff's choice of forum weighs against transfer.

The second factor is the convenience of the parties and witnesses. *American Aircraft*, 55 F.Supp.2d at 1351. This discussion encompassed the fourth factor, availability of compulsory process for witnesses, and the sixth element, financial ability to bear the cost of the change. *Id.* The Plaintiff resides in the venue he has chosen, which minimizes his travel expenses. He is disabled and is unable to earn an income. His only sources of income are social security disability benefits and insurance payments. His counsel in Florida is working on a contingency basis. A transfer to Connecticut would require out-of-pocket travel expenses for him, and would likely require Sterling to obtain counsel in Connecticut. Connecticut counsel generally require payment for their fees on an hourly basis. If counsel in Connecticut is unwilling to take the case on a contingency, Sterling will likely incur significant out of pocket expenses for his representation, possibly preventing him from bringing his case.

Additionally, both parties plan to call multiple witnesses. Sterling claims to have the majority of witnesses. Were the venue transferred to Connecticut, Sterling would either incur travel expenses for his witnesses, or would be required to provide less effective deposition testimony. Provident would be able to compel personal testimony of most of its witnesses, with minimal travel expenses, as they are Provident employees. Conversely, if venue remains in Florida, Sterling would be able to compel personal testimony without paying travel expenses, but Provident would incur travel expenses or be required to provide less effective deposition testimony. To transfer venue to Connecticut would shift inconveniences from Provident to Sterling. "The courts will not disturb a plaintiff's venue merely to shift inconveniences between the parties." *American Aircraft*, 55 F.Supp.2d at 1351. This shift in inconvenience weighs against transfer objectively due to the mere shift of inconvenience, and, subjectively, due to the disproportionate impact a transfer would have on Sterling's ability to bring his case. The convenience of the parties, availability of compulsory process for witnesses, and financial ability to bear the costs of transfer all weigh against transfer of venue.

"One of the most important factors for consideration is the convenience of the witnesses." *Response Reward Systems* 189 F.Supp.2d at 1339. However, "litigation is always inconvenient to some party or witness." *Garay v. BRK Electronics*, 755 F.Supp. 1010, 1012 (M.D. Fla. 2002). If venue remains in Florida, Providents' witnesses will either be inconvenienced by a trip to Florida, or they will be presented by deposition. Conversely, if venue is transferred to Connecticut, Sterling's witnesses will either be inconvenienced, or will be presented by deposition. *Id.* Since there has been no showing that the witnesses cannot be effectively presented by deposition, transfer would simply shift inconvenience to Sterling. *Id*. Therefore, the convenience of the witnesses weighs against transfer.

The remaining factors are the third factor, the relative ease of access to sources of proof, the fifth factor, the location of relative documents, and the seventh factor, all other problems that make trial of the case easy, expeditious, and inexpensive. *American Aircraft*, 55 F.Supp.2d at 1351.

The discussion of relative ease of access to sources of proof, the third factor, encompasses witness testimony, and the location of documentation, the fifth factor, because the proof required for this case is in the form of witnesses and documentation. The issue of witnesses has already been discussed, leaving the issue of documentation. Most of Sterling's documentation would most likely be in Florida, with his witnesses. Provident's documentation is not in Connecticut, but it states that additional documentation that will be needed is in Connecticut. Since the bulk of Sterling's evidence is located in his venue of choice, and some of Provident's documentation is in its venue of choice, while some is not, this factor is neutral, and neutral factors will weigh against transfer due to the presumption in favor of a plaintiff's choice of venue. *American Aircraft*, 55 F.Supp.2d at 1351.

The final factor addresses all other problems that make trial of the case easy, expeditious, and inexpensive. *Id.* "The choice of law applicable to the controversy is given some weight." *Garay*, 755 F.Supp. at 1012. Sterling has brought this action under Connecticut law. The choice of applicable law weighs in favor of transfer. *Id.* However, this Court is competent to apply foreign law, and does so. *Id.*

All but one of the factors discussed above either weigh against transfer of venue, or are neutral. Neutral factors ultimately weigh against transfer when the presumption for the plaintiff's choice of forum is applied. The remaining factor that weighs in favor of transfer is simply not compelling enough to grant a motion for transfer of venue. The motion to transfer venue is **DENIED**.

## **MOTION TO DISMISS**

### Standard of Review

As a defense to a plaintiff's complaint, a defendant may file a motion with the court when the plaintiff has failed to state a claim under which relief can be granted. Fed. R. Civ. P. 12(b)(6). This is an action governed by Connecticut state law, filed in federal court. As such, federal procedural law will govern the federal pleading requirements, while Connecticut law will define the elements of the causes of action. *See Martin v. American Equity ins. Co.*, 185 F.Supp. 2d. 162, 164 (D. Conn. 2002).

*As to the Sufficiency of the Pleading Itself*

In evaluating a motion to dismiss on its merits, the court must limit their consideration to the pleadings and attached exhibits. *Grossman v. Nationsbank*, N.A., 225 F.3d 1228, 1231 (11th Cir. 2002). "While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *Frenck v. Corr. Corp. of Am.*, 2006 U.S. Dist. LEXIS 79893 (M.D. Fla. 2006).

*As to Failing to State a Claim*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 2007 U.S. LEXIS

6814, 8 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 2007 U.S. LEXIS 5901, 21 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) abrogated by *Bell Atlantic Corp. v. Twombly*, 2007 U.S. LEXIS 5901, 21 (2007))).

When ruling on a motion to dismiss, a court is required to review the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Services, Inc.* 769 F.2D 700, 703 (11th Cir. 1985). If no construction of the factual allegations support the cause of action, then it is appropriate to dismiss the complaint. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

The Eleventh Circuit Court of Appeals has held that dismissal under Rule 12(b)(6) is warranted “only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.” *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1326 (11th Cir. 2004). When the federal court reviews a complaint’s sufficiency, the issue is not whether the plaintiff will ultimately emerge victorious, but whether the claimant is entitled to offer evidence to support the claims. *Swierkiewicz v. Worema N.A.*, 534 U.S. 506, 512 (2002).

**Discussion**

In deciding a motion to dismiss a count, the court must first determine what a plaintiff must demonstrate (the elements of the count) in order to state a claim for which relief can be granted. Then court must then look to the pleading itself to determine if the pleading meets the pleading requirements. If the pleading meets the requirements, the motion must be denied. If the motion does not meet the requirements, the motion must be granted. The following causes are raised by the plaintiff.

*Breach of Common Law Duty of Good Faith and Fair Dealing*

In order to state a claim for bad faith under Connecticut law, three essential elements must be alleged:

> [F]irst, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonable expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive some or all of those benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith.

*Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002). Determination of what constitutes bad faith must be determined on a case-by-case basis. *Uberti v. Lincoln National Life Ins. Co.*, 144 F. Supp. 2d 90, 104 (D. Conn. 2001). In order to have acted in bad faith, an insurance company must have engaged in conduct "implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or contractual obligation not prompted by an honest mistake as to one's rights or duties." *Id* at 103. "Insureds in Connecticut can expect that insurers will reasonably and adequately investigate claims before denying coverage." *Id*. at 104. Further, per Connecticut law:

> An insured is entitled to expect that a claim examination will include, as part of a reasonable investigation, consideration of the relevant opinions of the treating physician where a medical issue is unclear or controverted, or consideration of the opinions of an independent physician from an appropriate specialty before deciding to terminate benefits on the basis of a medical conclusion.

*Id.* An insurer may not cut off benefits on the basis of unsupported determinations resulting from arbitrary failure or refusal to properly perform the claims examination function. *Id*. However, "evidence of a mere coverage dispute or mere negligence in an investigation will not demonstrate a breach of good faith and fair dealing." *Id*.

As such, before terminating Sterling's benefits based on a medical conclusion, Provident had a duty to reasonably and adequately investigate Sterling's claim, and that investigation was required to consider relevant opinions of treating physicians, *or* an independent physician of appropriate specialty. Any decision to discontinue benefits on the basis of a medical conclusion was to be based on the results of that investigation, and not arbitrarily made without benefit of medical advice.

Therefore, in order to have properly plead the bad faith element of the breach of good faith claim, Sterling needed to allege that Provident discontinued benefits based on a medical conclusion, and that Provident did not reasonably and adequately investigate Sterling's claim, either by failing to consider the relevant opinions of treating physicians, or by failing to consider the opinion of an appropriate, independent physician.

As to element one, Sterling properly alleges that there is a valid disability insurance policy in place. (Docket No. 1 Pg. 2 ¶ 6). As to element two, Sterling properly alleges that Provident did not have a reasonable basis for terminating benefits under the policy. (Docket No. 1 Pg. 4 ¶ 15). As two element three, Sterling properly alleges that Provident discontinued disability payments based on a medical decision to continue to treat his disability as a sickness instead of an injury (Docket No. 1 Pg. 4 ¶ 13). Finally, Sterling properly alleges that Provident failed to reasonably and adequately investigate Sterling's claim by intentionally disregarding competent medical reports. (Docket No. 1 Pg. 5 ¶ 20). No reasonable investigation can occur without considering competent medical reports.

The pleading properly alleges all the elements of a cause of action for breach of common law duty of good faith and fair dealing in Connecticut. It gives the defendant fair notice of what the claim is, and the grounds on which it rests. Viewing the complaint in the light most favorable to the plaintiff, and considering the exceedingly low threshold a complaint must meet to survive a motion to dismiss, the motion to dismiss count two is **DENIED**.

*Intentional Infliction of Emotional Distress*

Under Connecticut law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege: 1) that the defendant intended or knew or should have known that the emotional distress would likely result from its conduct; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff distress; and 4) that the plaintiff's distress was severe. *Myers v. Bunker Ramo Corp,* 1992 U.S. Dist. Lexis 5336, 26 (D. Conn. 1992). Provident attacks Sterling's

pleading saying the Sterling failed to allege any facts that support elements one, two, and three, and that Sterlings allegation of element three was merely a conclusory allegation, insufficient for a proper pleading.

In support of its repeated assertions that factual allegations are required in order for a federal pleading to be sufficient to survive a motion to dismiss, Provident cites *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2nd Cir. 1996). (Docket No. 10 Pg. 4). Provident then cites *Myers v. Bunker Ramo Corp*., 1992 U.S. Dist. LEXIS 5336, 26 (D. Conn. 1992) to support the statement that “a plaintiff must not only allege each of the four elements, but must also allege facts sufficient to support them.” (Docket No. 10 Pg. 8).

In *DeJesus*, the court discusses the fraudulent actions that plaintiff asserted. *Id*. Pleadings alleging fraud must be stated with particularity. Fed. R. Civ P. 9(b). Since the instant action is not for fraud, this heightened pleading standard does not apply. Further, Provident misconstrues *Myers*. The *Myers* court, when reaching its conclusion, says “inasmuch as the plaintiff has neither *alleged nor set forth specific facts showing* ‘extreme and outrageous conduct…’” *Myers,* 1992 U.S. Dist. LEXIS 5336 at 29 (emphasis added). The *Myers* court does not require the plaintiff to allege each element and provide supporting facts. Properly read, it allows the plaintiff to either allege extreme and outrageous conduct, or to set forth facts showing extreme and outrageous conduct. *Id*. Again, “…specific facts are not necessary; the statement need only ‘give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 2007 U.S. LEXIS 6814 at 8.

Sterling alleges that Provident intended to “furnish reassurance and peace of mind to insureds who might suffer disabilities, relieving them of the emotional distress that would ordinarily result from their loss…” . Sterling also alleges that Provident “knew at all material times that the reason Plaintiff purchased the policy was to provide relief from the anxiety and emotional distress that he would suffer in the event he suffered a disability...” *Id*. at ¶ 25. Further, Sterling says that such a wrongful cancellation would cause severe emotional distress. *Id*. at ¶ 26. This clearly meets the proper allegation of element one. Sterling properly alleges that Plaintiff had distress and his distress was

severe, satisfying the third and fourth elements. (Docket No. 1 Pg. 7 ¶ 28). This leaves element two.

As for element two, "extreme and outrageous conduct" is conduct that exceeds "all bounds normally tolerated by society." *Appleton v. Board of Education of the Town of Stonington Et. Al*., 254 Conn. 205, 210 (2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *Id*. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery…" *See Mellaly v. Eastman Kodak Company*, 597 A.2d 846 (Conn. Supp. 1991).

Sterling alleges that Provident "…intentionally disregarded competent medical reports" and that there was "no reasonable basis for its discontinuance of disability benefits." (Docket No. 1 Pg. 5 ¶¶ 20-21). However, the threshold is not whether the conduct was intentional, but whether the conduct was "extreme and outrageous." Sterling cites several cases where the court denied defense motions against claims of intentional infliction of emotional distress. In those cases, the conduct of the defendant was either designed to produce distress as the end result, or produced distress along with another goal. In the latter case, the conduct have readily been altered in a way that would have allowed the defendant to accomplish its goals in a manner that would have allowed the plaintiff to have avoided the distress.

In the instant case, all of Provident's actions taken were in accord with the end goal of not continuing the disability payments. There were no actions alleged that had no other purpose than to cause distress to the plaintiff, nor were there actions alleged that both allowed Provident to accomplish its goal, and caused distress to Sterling, when other actions were available to Provident which would have allowed it to accomplish its goal without causing distress to Sterling. In other words, distress would naturally and unavoidably result from any decision to cancel payments, whether it be a proper or an improper decision. Sterling was not particularly susceptible to any decision to

discontinue payments, as anyone in his position would suffer distress from such a decision. *See Brown v. Ellis*, 484 A.2d 944 (Conn. Supp. 1984). There is no way Provident could have discontinued making payments without causing Sterling distress. The distress would likely be greater if the decision to cancel was improper, which is a matter to be determined later. That additional distress would be the result of, as Sterling alleges, an unreasonable decision to discontinue payments. Sterling alleges that the unreasonable decision was based on an incomplete set of facts that Provident deliberately kept incomplete by intentionally ignoring competent medical reports. However, ignoring medical reports does not rise to the level of "extreme and outrageous conduct." *See Carroll v. Allstate Insurance Company*, 815 A.2d 119, 126 (Conn. 2003) (concluding that the conduct of an insurance company that did not conduct a thorough or reasoned investigation of an arson incident did not rise to the level required for an intentional infliction of emotional distress claim.) Therefore, Provident's motion to dismiss count three is **GRANTED** with prejudice.

*Negligent Infliction of Emotional Distress*

"In Connecticut, negligent infliction of emotional distress requires proof that: 1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress." *Vincent v. Essent Healthcare of Connecticut*, 2007 U.S. Dist. LEXIS 5498, 24 (D.Conn. 2007). Further, elements two:

> [E]ssentially requires that the fear or distress experienced by the plaintiffs *be reasonable in light of the conduct of the defendants*. If such fear were reasonable in light of the defendant's conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the fear were unreasonable in light of the defendant's conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable.

*Carrol*, 815 A.2d at 128 (emphasis added). The "existence of a duty of care is a prerequisite to a finding of negligence." *Gomes v. Commercial Union Ins. Co.*, 258 Conn. 603, 614 (2001).

Sterling has properly alleged that Provident owed him a duty of care, by way of the Connecticut duty of good faith and fair dealing imposed via the contact of insurance. (Docket No. 1 Pg. 5 ¶¶ 19, 31). (*See Cornerstone Realty v. Dresser-Rand Co.*, 993 F. Supp. 107 (D.Conn. 1997) (Discussing whether an action for breach of duty of good faith arises in contract or tort).) Sterling has properly alleged element one, that his fear was reasonable in light of the defendant's conduct. Sterling notes that Provident's marketing for policies of this type emphasized that the policies were to "furnish reassurance and peace of mind" and relieve insureds of "emotional distress" by providing payments for those who suffer disabilities, and that this was why Sterling purchased the policy. (Docket No. 1 Pg. 5 ¶¶ 24-25). Sterling further alleges that for those reasons, Provident could not have been unaware that unreasonably canceling the payments would result in distress to Sterling. (Docket No. 1 Pg. 7 ¶ 27). Sterling has properly alleged element two, that his distress was foreseeable, for the same reasons that support element one.

Regarding element three, Sterling alleges that his distress was severe and continuing. (Docket No. 1 Pg. 7 ¶ 28). The complaint does not directly mention illness or sickness that may result from the distress. It could be inferred from the pleading that continued severe emotional distress might result in illness, which would then meet the pleading requirement. However, a similar situation has already been addressed by the Connecticut Supreme Court. *Buckman v. People Express, Inc.*, 530 A.2d 596 (Conn. 1987). In *Buckman*, the defendant challenged the sufficiency of a pleading for negligent infliction of emotional distress in an action where an employer failed to allow an employee to continue health insurance coverage after his termination of employment, in violation of Connecticut statute. *Id*. The pleading stated the "the defendant's bad faith conduct has caused the plaintiff financial loss and mental distress and anguish." *Id*. The court held that this "thoroughly apprised the defendant of the plaintiff's intent to pursue a claim for mental and emotional distress." *Id*. The court therefore denied the defendant's claim of error. *Id*. Similarly, Sterling has alleged bad faith conduct, financial loss, and mental distress. Since the pleading standard in federal court is more liberal than that of Connecticut state court, it follows that Sterling's pleading sufficiently alleges element three.

Finally, Sterling properly alleges element four, that the defendant's conduct was the cause of the plaintiff's distress, when he says that the discontinuation of the disability payments in fact resulted in severe and continuing emotional distress. (Docket No. 1 Pg. 7 ¶ 28).

Sterling's complaint properly alleges that a duty existed, and alleges each of the elements required to state a claim for negligent infliction of emotional distress. *See Carroll v. Allstate Insurance Company*, 815 A.2d 119, 126 (Conn. 2003) (where the Supreme Court of Connecticut concluded that the conduct of an insurance company that conducted a "shoddy" investigation of an arson incident supported a claim for negligent infliction of emotional distress). Therefore, Provident's motion to dismiss count four is **DENIED.**

*Violation of Connecticut Unfair Insurance Practices Act ("CUIPA")*

Connecticut law is unsettled on whether or not there is a private right of action under CUIPA. *See George's Auto Parts, Inc., v. Providence Washington Ins. Co.*, 2001 WL 206081 (Conn. Super. 2001) (unpublished). The Connecticut Supreme Court has declined to decide the issue thus far. *Id*. In 2004, the U.S. District Court for the District of Connecticut recently ruled that there is no private right of action under CUIPA. *DeRossi v. National Loss Management*, 328 F.Supp.2d 283, 288 (D.Conn. 2004). However, in 2001, a Connecticut Superior Court found there is a private right of action under CUIPA. *George's*, 2001 WL 206081 at 1 (unpublished). There does not appear to be a conclusive trend in the Connecticut state courts, when looking at the number of state court cases that do and do not allow private causes of action, to guide this court. As such, and taking all allegations of fact in plaintiff's pleading to be true, including that there is a private cause of action available under CUIPA, This Court will not decide the issue at this point, and, therefore, will not grant the motion to dismiss on this point.

Plaintiff fails to state which subsections of Conn. Gen. Stat. § 38a-816 (CUIPA) were allegedly violated. An examination of the statute leads the court to believe that § 38a-816(6)(d) is the subsection in question. Conn. Gen. Stat. § 38a-816 (2007). This section defines one possible CUIPA violation as unfair claim settlement practices. *Id*. Unfair claim settlement practices include settlement practices occurring with such

frequency as to indicate a general business practice, including "refusing to pay claims without conducting a reasonable investigation based upon all available information." *Id*. Therefore, in order to properly plead this violation of CUIPA, Sterling must have alleged that: 1) Provident was an insurance company that was 2) engaged in claim settlement procedures that included 3) refusing to pay claims 4) without conducting a reasonable investigation 5) based on all available information, and that it did this 6) with such frequency as to indicate a general business practice.

Sterling properly alleged that Provident is an insurance company that is thus necessarily engaged in claim settlement practices. (Docket No. 1 Pg. 2 ¶ 3). Sterling properly alleges that Provident refused to pay on his claim. (Docket No. 1 Pg. 4 ¶ 14). Sterling properly alleges that Provident did not conduct a reasonable investigation because it failed to consider all available information in that it intentionally ignored relevant medical reports. (Docket No. 1 Pg. 5 ¶ 20). This intentional ignorance is what lead to the breach of contract claim, but it was not a condition precedent for the breach of contract claim, because Provident could have conducted a reasonable investigation and still declined to continue payments. Had Provident conducted a reasonable investigation and failed to pay the claim, a CUIPA violation might not be available, but the breach of contract would still be available. The failure to conduct the investigation, i.e. the bad faith, is the additional act that Sterling alleges qualifies this conduct as a CUIPA violation. Thus, this element is properly alleged. Finally, Sterling properly alleges that Provident's conduct was "part or a pattern of conduct that was engaged in with such frequency as to constitute a general business practice." (Docket No. 1 Pg. 8 ¶ 34). This properly alleges the last element required to properly claim a CUIPA violation. Therefore, Defendants' motion to dismiss count five is **DENIED**.

*Violation of Connecticut Unfair Trade Practices Act - CUPTA*

The central prohibition of CUTPA is contained in § 42-110(b)(a), which provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(2007). "Under Connecticut state law, whether a practice violates CUPTA, i.e. is "unfair," is determined by applying the so-called 'cigarette rule.'" *Omega Engineering*

*Inc., v. Eastman Kodak Company*, 908 F.Supp. 1084, 1099 (D.Conn. 1995). The rule is as follows:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes injury to consumers [competitors or other businessmen].

*Id*. "All three criteria need not be satisfied to support a finding of unfairness." *Id*. "A practice may be unfair because of the degree to which it meets one of the criteria or because, to a lesser extent, it meets all three. *Id*. Therefore, in order to properly plead a CUPTA violation, Sterling could allege unfair conduct that: 1) offends public policy as established by statutes; 2) is immoral, unethical, oppressive, or unscrupulous; or 3) causes injury to consumers. There need not be an allegation in each category, but together they would need to support a finding of unfairness. *Id*.

Sterling properly alleges conduct that offends policy as established through statute by incorporating the same allegations used to support his CUIPA violation. A violation of CUIPA would meet the first criteria of a CUPTA analysis, establishing a CUIPA through CUTPA claim. Defendants state that in order for an insurer's alleged misconduct to constitute a violation of CUPTA, that conduct must also violate CUIPA, and conversely, an insured may not maintain a cause of action against its insurer under CUPTA in the absence of a cognizable claim under CUIPA. (Docket No. 10 Pg. 17). This is not so. More accurately, a CUTPA cause of action *may* be premised on a violation of CUIPA. *Bepko v. St. Paul Fire and Marine Insurance Co.*, 2005 U.S. Dist. LEXIS 39066, 9 (D.Conn. 2005). An example of that claim, such as is in the instant case, would be a violation of Conn. Gen. Stat. § 38a-816(6)(d), having a general business practice of failing to conduct reasonable investigations. If CUIPA is the basis for the CUTPA action, then in order for the CUTPA claim to stand, the CUIPA claim must stand, and in order for the CUIPA claim to stand, the plaintiff must allege that failure to conduct a reasonable investigations was done with such frequency as to indicate a general business practice. *Id*. Conversely, if the CUIPA claim fails under this approach, the CUTPA claim would necessarily fail. *Id*. However, under the first criterion, an

independent CUPTA action can stand, based on the policies behind CUIPA, even if CUIPA itself is not violated. *Id*; *See also Mead v. J. William Burns*, 509 A.2d 11, 23 (1986).

Under CUTPA, a plaintiff can bring a cause of action if he alleges conduct that offends policy as it has been established by any statute, CUIPA included. A party can offend the policy behind a statute without offending the actual statute. *Id*. In the case of CUIPA, the legislative policy behind it is such that "isolated instances of unfair insurance settlement practices are not violative of the public policy of this state." *Id*. Therefore, acts not delineated as a violation of CUIPA within CUIPA's text itself, can still serve as the basis of an independent CUPTA action based on CUIPA, if the conduct offended CUIPA's policy, which is to prevent patterns of unfair insurance practices. This means that any CUPTA violations based on CUIPA, either as CUIPA through CUPTA, or CUPTA independently, must have been engaged in with such frequency as to constitute a general business practice. It does not mean that CUIPA itself had to have been violated, nor that CUIPA is the only basis for a CUPTA action. *Id*. Sterling does appear to be relying on the CUIPA through CUPTA cause of action based on the facts he has alleged, but he has not specifically limited himself to that cause of action, as facts are not required in the pleading. Because Sterling has alleged a specific violation of CUIPA, he has alleged a CUIPA through CUTPA cause of action through element one of a CUTPA analysis. (Docket No. 1 Pg. 8 ¶ 33). However, Sterling has also generally alleged conduct that violates CUIPA's policy, leaving open the possibility that he may present other facts that would support an independent CUTPA claim, based on the policies behind CUIPA, but not necessarily in violation of CUIPA. Sterling has also generally alleged a pattern of conduct that is immoral, unethical, oppressive, or unscrupulous, which satisfies element two of a CUTPA analysis. (Docket No. 1 Pg. 8 ¶ 33). Sterling has properly plead the first criterion as well as the second criterion of the CUTPA analysis.

Finally, Sterling alleges the third criterion, injury. Sterling implies injury to many consumers when he alleges his injuries, and says that they are the result of pattern of conduct. However, a plaintiff can maintain a CUTPA cause of action without showing consumer injury. *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 567 (1984). "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." *Id* at 569. Sterling has alleged substantial financial injury and emotional distress. (Docket No. 1 Pg. 4 ¶ 17); (Docket No. 1 Pg. 7 ¶ 28). Sterling has implied a lack of countervailing benefit to his client, but has not directly alleged a lack of countervailing benefit to the competition that the practice produced. However, it can be readily inferred that failing to honor an insurance policy as he alleged, would produce little such benefit. Finally, Sterling has alleged that he could not avoid this injury because the insurance company is not receptive to his information, though he has offered the information to them. (Docket No. 1 Pg. 5 ¶ 20).

Sterling has properly alleged each of the three criteria required to be analyzed for a CUPTA violation, though not all three are necessary to support a claim. Therefore, defendants' motion to dismiss count six is **DENIED**. Accordingly, it is

**ORDERED** Defendants' Motion to Request Oral Argument (Docket No. 8) is hereby **DENIED**. Defendants' Motion to Transfer Venue (Docket No. 8) is hereby **DENIED**. Defendants' Motion to Defer Ruling on Defendants' Motion to Dismiss is hereby denied as **MOOT**. Defendants' Motion to Dismiss Count Two, Breach of Good Faith and Fair Dealing, is hereby **DENIED**. Defendants' Motion to Dismiss Count Three, Intentional Infliction of Emotional Distress, is hereby **GRANTED**, with prejudice. Defendants' Motion to Dismiss Count Four, Negligent Infliction of Emotional Distress, is hereby **DENIED**. Defendants' Motion to Dismiss Count Five, Violation of Connecticut Unfair Insurance Practices Act, is hereby **DENIED**. Defendants' Motion to Dismiss Count Six, Violation of Connecticut Unfair Trade Practices Act, is hereby **DENIED**. The Defendants have ten (10) days from this order to answer the complaint.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of June, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Cc: All Parties and Counsel of Record